# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DEBRADRE D. JACKSON,**
                  Plaintiff,

v.                                               **Case No. 16-cv-1584-pp**

**DEPARTMENT OF CORRECTIONS,
RACINE CORRECTIONAL INSTITUTION,
DIEBOLD,
LT. LONDRE,
PAUL S. KEMPER,
CAPT. GIERNOTH,
DEPUTY JOHNSON, and
C. O'DONNELL,**

                  Defendants.

## DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 3) AND SCREENING THE COMPLAINT (DKT. NO. 1)

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. §1983, alleging that the defendants violated his Fourteenth Amendment rights at the Racine Correctional Institution. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 3, and screens the plaintiff's complaint.

    **I.    THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit

1

without pre-paying the civil case-filing fee, as long as he meets certain conditions. Id. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 9, 2016, the court assessed an initial partial filing fee of $1.63. Dkt. No. 6. The plaintiff made payment in the amount of $2.00 on January 13, 2017. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filling fee and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.  SCREENING OF THE PLAINTIFF'S COMPLAINT

### A.  Standard for Screening Complaints

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss an action or portion thereof if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific

2

facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis set forth in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.     Facts Alleged in the Complaint

On June 28, 2016, Lieutenant Londre removed the plaintiff from general population and placed him in Temporary Lock-Up ("TLU") pending "an

3

investigation." Dkt. No. 1 at 2. Unit Manager Diebold authorized Londre to make the transfer. Id. Later in July 2016, Captain Giernoth released the plaintiff from TLU and took him to Restrictive Housing—Behavioral Modification Unit ("Green Unit"). Id. Deputy Warden Johnson authorized the transfer from TLU to Green Unit. Id. at 5. The plaintiff provides no further information on what happened with the "investigation," how long he remained in TLU, the conditions in TLU, why he was released from TLU, or whether he was charged with a rule violation pursuant to the investigation. Id. at 2. The plaintiff remained in Green Unit for about eighty days. Id.

Green Unit is a housing unit used to prepare inmates for transfer from TLU back to general population. Id. Inmates in Green Unit have restricted telephone privileges, restricted movement in the dayroom and during recreation, and have to wear a different color uniform than inmates in general population. Id. at 2-3. While in Green Unit, the plaintiff did not have access to his "personal property" (TV, radio, fan, etc.) and could not wear his "personal clothing" (sweatpants, shorts, t-shirts). Id. at 3. The plaintiff also had to wear his yellow uniform during family visits until he advanced from "level A" to "level C." Id.

As a result of the restrictions, the plaintiff became depressed. Id. at 4. He spoke with Captain Chapman (not a defendant) about his depression. Id. The plaintiff states that Chapman did not know why the plaintiff was on Green Unit but that Giernoth had emailed Chapman to inform him that the plaintiff should be there. Id. The plaintiff also spoke with Diebold, who stated that she did not

4

know why the plaintiff was in Green Unit, but that the plaintiff "had [his] hand in the cookie jar somehow." Id. at 5. Finally, the plaintiff also spoke with Deputy Warden Johnson, and Johnson stated that he knew about the plaintiff's situation because he had authorized the transfer to Green Unit. Id.

The plaintiff filed an inmate complaint about his transfer to Green Unit, and Paul S. Kemper dismissed the complaint. Id. at 6. The plaintiff appealed that decision C. O'Donnell dismissed the appeal. Id.

C. <u>Legal Analysis of Alleged Facts</u>

Under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. <u>Buchanan-Moore v. County of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citing <u>Kramer v. Village of North Fond du Lac</u>, 384 F.3d 856, 861 (7th Cir. 2004)).

The Fourteenth Amendment protects an individual against deprivation of life, liberty, or property without due process of law. U.S. Const. Amend. XIV. "Those who seek to invoke [the Fourteenth Amendment's] procedural protection must establish that one of those interests is at stake." <u>Wilkerson v. Austin</u>, 545 U.S. 209, 221 (2005). An inmate has a liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). However, "[i]nmates have no liberty interest in avoiding transfer to discretionary segregation—that

5

is segregation for administrative, protective, or investigative purposes." Id. This is because discretionary, or administrative, segregation is not considered "atypical," but rather an "ordinary incident of prison life" that prisoners should anticipate during their time in prison. Townsend v. Fuchs, 522 F.3d 765, 771 (7th Cir. 2008).

Once the plaintiff establishes a liberty interest, "[d]ue process requires that prisoners in a disciplinary proceeding be given: '(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.'" See Rasheed-Bey v. Duckworth, 969 F.2d 357, 351 (7th Cir. 1992).

According to the complaint, Londre and Diebold transferred the plaintiff from general population to TLU pending an "investigation." The plaintiff provides no further information about what happened, or whether he had a disciplinary proceeding before or after the transfer. Gienoth and Johnson then transferred the plaintiff from TLU to the Green Unit "to prepare [him] for a return to general population." He remained in Green Unit for about eighty days, during which he lost certain privileges that he used to have in general population. The plaintiff states that he never got a hearing before losing these privileges.

At this very preliminary stage of the litigation, the court will allow the

plaintiff to proceed with a procedural and a substantive due process claim against Londre, Diebold, Giernoth, and Johnson, because he has alleged that they subjected him to discipline without proper process. As the court noted above, however, the plaintiff has provided very few facts about what happened, and some of those missing facts will be important at later stages in the case. See Kervin v. Barnes, 787 F.3d 833, 836-37 (7th Cir. 2015)( concluding that a period of segregation considerably shorter than six months does not establish a deprivation of liberty absent other harsh and atypical conditions of confinement that amount to punishment); see also Miller v. Dobier, 634 F.3d 412, 414 (7th Cir. 2011)( "Separation from general population is not, by itself, a significant [liberty] deprivation.").

The court will dismiss the Department of Corrections, Racine Correctional Institution, Paul S. Kemper, and C. O'Donnell as defendants. The Department of Corrections and the Racine Correctional Institution are not "persons" within the meaning of §1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 70-71 (1989).

As to Kemper and O'Donnell, liability under §1983 is based on a defendant's "personal involvement" in the constitutional deprivation. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). Kemper and O'Donnell's "personal involvement" in the incidents the plaintiff describes was limited to "dismissing" the plaintiff's inmate complaint and appeal. Dismissing a complaint, absent other wrongful acts, does not state a claim for "deliberate indifference." See Burks v. Rasmisch, 555 F.3d 592, 595-96 (7th Cir.

7

2009)(concluding that an inmate complaint examiner is not liable under § 1983 for merely dismissing an inmate's complaint; a complaint examiner shows deliberate indifference only when he refuses to do his job or "routinely sends grievances to the shredder without reading them.").

To the extent that the plaintiff seeks to assert an "official capacity" claim against Kemper and O'Donnell, he fails to allege facts which show that these individuals have taken unconstitutional actions which require them to "conform future conduct." See Quern v. Jordan, 440 U.S. 332, 337 (1979)(concluding that §1983 claims against state actors in their official capacity are limited to injunctive or declaratory relief "to conform future conduct to the requirements of federal law.") The plaintiff alleges that Kemper and O'Donnell are "decision makers" for Racine Correctional Institution, but he does not identify any unconstitutional decisions, policies, or actions that require future change.

### III. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 3. The court **ORDERS** the Secretary of the Wisconsin Department of Corrections or his designee to collect from the plaintiff's prison trust account the $**348.00** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C.

8

§1915(b)(2). The Secretary shall clearly identify the payments by the case name and number. The court will send a copy of this order to the warden of the Racine Correctional Institution, where the plaintiff is confined.

The court further **ORDERS** that the Department of Corrections, Racine Correctional Institution, Paul S. Kemper, and C. O' Donnell are **DISMISSED** as defendants.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Diebold, Lt. Londre, Capt. Giernoth, and Deputy Warden Johnson. Diebold, Lt. Londre, Capt. Giernoth, and Deputy Warden Johnson shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. Because the clerk's office staff will electronically scan and enter on the docket each document filed upon receipt, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The

plaintiff should also retain a personal copy of each document filed with the court.

The court advises the plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 10th day of February, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge